UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-38-TBR

LEO PARRINO                                                                                                  Plaintiff

v.

KATHLEEN SEBELIUS,
SEC'Y, DEPT. OF HEALTH & HUMAN SERVS.
and DANIEL R. LEVINSON, INSPECTOR GENERAL                             Defendants

**MEMORANDUM OPINION AND ORDER**

At the request of the parties, the Court will determine whether or not Mr. Parrino has a Fifth Amendment Due Process claim as a matter of law. (Docket No. 38.) The Plaintiff, Leo Parrino, has submitted a brief on the matter. (Docket No. 24.) The Defendants, Kathleen Sebelius, Secretary of the Department of Health and Human Services and Daniel R. Levinson, Inspector General, have also filed a brief on the matter. (Docket No. 25.) As the Court has given the parties an opportunity to submit additional briefs and neither party filed a brief, this matter is ripe for adjudication. For the reasons enumerated below, it is hereby ORDERED that the Plaintiff does not have a Fifth Amendment Due Process claim as a matter of law.

**Background**

This action concerns the decision of the Department of Health and Human Services ("HHS") acting through the Office of the Inspector General ("OIG") to exclude Mr. Parrino from participation as a provider in all federal health care programs.

Mr. Parrino is a licensed pharmacist. (Docket No. 1 at 1.) In his capacity as a pharmacist, Mr. Parrino worked for National Respiratory Services, LLC ("NRS") and was involved in the preparation of inhaler medication. (Docket No. 1 at 3-4.) After leaving NRS, agents from the

1

FDA and FBI contacted Mr. Parrino regarding medications prepared during his employment at NRS. (Docket No. 1 at 4-5.) Mr. Parrino eventually learned that he was a target of the FDA and FBI's investigation. (Docket No. 1 at 5.) As a result of the investigation, Mr. Parrino pled guilty to the misdemeanor offense of introducing and delivering for introduction into interstate commerce inhalation drugs that were misbranded in violation of 21 U.S.C. §§ 331(a), 333(a)(1), and 352(a) and 18 U.S.C. § 2. (Docket Nos. 1 at 5; 24 at 1.) On May 10, 2013, Mr. Parrino was sentenced in conformity with his plea agreement and received one (1) year of probation and ordered to pay restitution. (Docket No. 1 at 6.)

Following his guilty plea, HHS acting through the OIG notified Mr. Parrino that he was excluded from participation as a provider in all federal health care programs including Medicare and Medicaid for the minimum statutory period of five years. (Docket No. 1 at 6.) In its letter to Mr. Parrino, the OIG informed him that its basis for his exclusion was 42 U.S.C. § 1320a-7(a) which is the mandatory exclusion provision. (Docket No. 8-9 at 1.) Mr. Parrino claims that the Defendants violated his due process rights in their application of the mandatory exclusionary provision under 42 U.S.C. § 1320a-7(a) because the "underlying conviction [to a strict liability offense] did not require proof of [Parrino's] knowledge that the drug was misbranded; or, that [Parrino] had any culpable mental state, or *mens rea*, in regard to introducing the drug into the stream of commerce." (Docket No. 1 at 7.) Mr. Parrino contends that:

> [T]he Government's reliance upon his plea to a misdemeanor involving the particular facts of the strict liability offense at issue violates his constitutional rights to due process, both as a result of substantially increasing the penalties constitutionally permitted resulting from a strict liability offense, and because the statute itself must constitutionally be read to prohibit the Defendants from seizing upon the general provisions of subsection (a) [the mandatory provision], which are much more onerous when applied to [Mr. Parrino], instead of proceeding under the permissive sections under subsection (b).

(Docket No. 13 at 6-7.)

**Discussion**

The Due Process Clause of the Fifth Amendment declares that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[1] The Due Process Clause "clothes individuals with the right to both substantive and procedural due process." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Here, Mr. Parrino appears to claim that the Defendants violated only his right to substantive due process. (*See* Docket Nos. 1 at 7-10; 24 at 3-8.) Therefore, the Court will address the merits of Mr. Parrino's substantive due process claim below.[2]

Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). It protects the individual from "the exercise of power

---

[1] Many of the cases cited in this opinion concern the substantive due process clause of the Fourteenth Amendment, which is a restriction upon the states. "[T]hose cases are also authoritative when adjudicating a Fifth Amendment claim against the federal government." *Borkins v. U.S. Postal Serv. Employees*, 97 F. App'x 32, 34 n.2 (6th Cir. 2004); *see also In re Storer,* 58 F.3d 1125, 1129 n.6 (6th Cir. 1995). Courts are to employ the same analysis when adjudicating a substantive due process claim under the Fourteenth Amendment as they apply when adjudicating a substantive due process claim under the Fifth Amendment. *Molina-Aviles v. D.C.*, 824 F. Supp. 2d 4, 9 n.8 (D.D.C. 2011).

[2] The Supreme Court has firmly established that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Procedural due process generally requires that the [government] provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest*."* *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)). According to the Sixth Circuit Court of Appeals, "to establish a procedural due process claim, a plaintiff must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures." *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014)). Here, Mr. Parrino does not argue that he was not given adequate notice and an opportunity to be heard regarding his exclusion from participation as a provider in all federal health care programs for a period of five years. (*See* Docket Nos. 1 at 7-10; 24 at 3-8). On May 29, 2013, Mr. Parrino received notice from the OIG of its intent to exclude him from participation in federal health care programs. (Docket. 8-7 at 1-2.) When the OIG made its final decision, Mr. Parrino was again notified and given information on the administrative appeals process. (Docket No. 8-9 at 1-4.) Additionally, Mr. Parrino pursued the administrative appeals process set forth in 42 U.S.C. § 1320a-7(f)(1). Mr. Parrino does not contend that the OIG and HHS did not provide him adequate procedures or notice through this process. Rather, Mr. Parrino argues that the agencies' discretionary action of applying the mandatory exclusionary provision, 42 U.S.C. § 1320a-7(a), instead of the permissive exclusionary provision, 42 U.S.C. § 1320a-7(b), has violated his right to due process.

3

without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In particular, substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that "shock the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)). Substantive due process also protects an individual's "right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions. *Id.* (first citing *Bowers*, 325 F.3d at 763; then citing *Pearson*, 961 F.2d at 1216-17). "In other words, the 'arbitrary and capricious' standard . . . is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers*, 325 F.3d at 763.

A plaintiff's claim alleging that the government has violated his or her substantive due process right may be presented in two forms. The first form is as a challenge to a law or regulation and the second is as a challenge to a discretionary action by a government official. *Stroder v. Kentucky Cabinet for Health & Family Servs.*, No. 3:09-CV-00947-H, 2012 WL 967599, at *1 (W.D. Ky. Mar. 21, 2012). Here, Mr. Parrino does not challenge the constitutionality of the statute at issue, 42 U.S.C. § 1320a-7. (Docket No. 24 at 2, 6.) Instead, Mr. Parrino challenges the OIG and HHS's discretionary application of the statute in their decision to exclude him from participation as a provider in all federal health care programs for a period of five years following his plea to a misdemeanor. (Docket Nos. 1 at 7-10; 24 at 1-3.)

In order for a plaintiff to state a claim alleging a violation of his or her substantive due process rights by a government official's discretionary actions, the Sixth Circuit Court of Appeals generally requires that he or she "must demonstrate a deprivation of a constitutionally protected liberty or property interest." *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688

4

(6th Cir. 2011) (citing *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431–32 (6th Cir. 2002)). However, the court has recently acknowledged that the Sixth Circuit's "case law on substantive due process is somewhat conflicted as to whether an underlying constitutionally-protected right must be established in order for a government action to violate one's rights by shocking the conscience." *Range*, 763 F.3d at 589 (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). The court went on to caution that "substantive due process is not a rigid conception, nor does it offer recourse for every wrongful action taken by the government . . . [as] the 'shocks the conscience' standard sets a high bar." *Id.* (quoting *EJS Props.*, 698 F.3d. at 862). Recently, a fellow Western District of Kentucky district court articulated the standard for a substantive due process claim challenging a discretionary action by a government official as follows:

> In order for a plaintiff to state a claim alleging a violation of substantive due process rights by the actions of a government official, "he must first demonstrate he has a property and/or liberty interest recognized by the United States Constitution...." *United States v. Green*, No. 5:06CR–19–R, 2008 WL 4000868, at *5 (W.D. Ky. Aug. 26, 2008); *see also Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). Next, he "must show that the government entity took an 'arbitrary and capricious action in the strict sense.'" *Id.* at *5 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992)).

*Stroder*, 2012 WL 967599, at *1. Given the Sixth Circuit's recent articulation of a non-rigid standard regarding whether or not a plaintiff must first establish an underlying constitutionally-protected right, this Court will continue its analysis and consider whether or not the government's alleged action was "arbitrary and capricious" even if Mr. Parrino is unable to show that he has a property and/or liberty interest recognized by the United States Constitution.

1. Existence of a Property or Liberty Interest Recognized by the Constitution

A. Property Interest

In order to have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). According to the United States Supreme Court, "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Here, Mr. Parrino argues that he has a property interest in his pharmacy license. (Docket No. 24 at 4.) Mr. Parrino contends "he has a legitimate claim of entitlement under state law to his license and the economic benefit that derives from his license." (Docket No. 24 at 5 (internal quotation marks omitted).) However, Mr. Parrino is mischaracterizing the issue as it is not whether he has a property interest in his pharmacy license but rather whether or not he has a property interest in being a provider in all federal health care programs including Medicare and Medicaid. HHS and the OIG excluded Mr. Parrino from participation as a provider in all federal health care programs, but they did not take away his license to practice.

Though the Sixth Circuit has not directly addressed this issue, several other circuit courts have found that a provider does not have a property interest in continued participation in federal health care programs. *Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995); *Koerpel v. Heckler*, 797 F.2d 858, 863-65 (10th Cir. 1986); *Cervoni v. Sec'y of Health, Ed. & Welfare*, 581 F.2d 1010, 1018 (1st Cir. 1978). Though the Second and the Fourth Circuits have declared that providers do have a property interest in continued participation in federal health care programs, both courts made this decision in one sentence with no further analysis. *Patchogue Nursing Ctr. v. Bowen*, 797 F.2d 1137, 1144 (2d Cir. 1986); *Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986). The circuit courts that have more fully considered the issue

have reasoned that health care providers are not the intended beneficiaries of the federal health care programs and as such they do not have a property interest in continued participation or reimbursement. *Erickson*, 67 F.3d at 862; *Koerpel*, 797 F.2d at 864; *Cervoni*, 581 F.2d at 1018. According to the First Circuit Court of Appeals, "the real parties in interest are the beneficiaries [and] physicians are parties in interest only as assignees of the beneficiaries." *Cervoni*, 581 F.2d at 1018. The Tenth Circuit in *Koerpel* noted that the excluded provider's license to practice medicine was not being revoked and consequently concluded that though the government's exclusion would cause the provider to suffer financial loss, the financial loss was not controlling. *Koerpel*, 797 F.2d at 864. The court went on to explain that the excluded provider's financial losses "do not advance to the level of a protected property right because no clear promises have been made by the government." *Id.*

While the Sixth Circuit Court of Appeals has not determined whether or not providers have a property interest in continued participation in federal health care programs, it has stated that "although the economic impact of canceling Medicare eligibility is significant, 'a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program.'" *Latimer v. Robinson*, 338 F. Supp. 2d 841, 847 (M.D. Tenn. 2004) aff'd, No. 04-5828, 2005 WL 1513103 (6th Cir. June 21, 2005) (quoting *Oakland Med. Group, P.C. v. Sec'y of Health and Human Servs.*, 298 F.3d 507, 511 (6th Cir. 2002)). Furthermore, a fellow Sixth Circuit district court has found that "providers have no due process claim for deprivation of continued participation in government funded insurance programs." *Latimer*, 338 F. Supp. 2d at 848. This Court is persuaded by the decision of our fellow Sixth Circuit district court as well as the opinions of the First, Ninth, and Tenth Circuit Courts of Appeal and agrees that providers do not have a property interest in continued participation in federal health care programs.

B. Liberty Interest

Mr. Parrino also argues that he has a liberty interest in his good name and professional reputation and that HHS and the OIG's decision to exclude him from participation as a provider in all federal health care programs has placed those interests at risk. (Docket No. 13 at 10; 24 at 3-4.)

The Supreme Court has stated that "[i]n a constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad." *Roth*, 408 U.S. at 572 (first citing *Bolling v. Sharpe*, 347 U.S. 497, 499—500 (1954); then citing *Stanley v. Illinois*, 405 U.S. 645 (1972)). "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (citing *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). "However, defamation alone is not enough to invoke due process concerns." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)). In order for a violation of one's liberty interest to arise, "[s]ome alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation." *Id.* (first citing *Paul*, 424 U.S. at 711-12; then citing *Ferencz v. Hairston,* 119 F.3d 1244, 1249 (6th Cir. 1997)). The Sixth Circuit Court of Appeals has found that "[t]o establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996) (citing *Roth*, 408 U.S. at 573-74)). Additionally, "[a] plaintiff must also allege in his or her complaint that the stigmatizing information was publically disclosed." *Id.* (citing *Christian v. Belcher*, 888 F.2d 410, 416 (6th Cir. 1989)).

Mr. Parrino contends that HHS and the OIG's five year exclusion will result in his inability to work in his profession. (Docket Nos. 1 at 10; 5-1 at 1; 13 at 10.) Mr. Parrino states

that he has lost his job as a pharmacist due to his exclusion. (Docket No. 24 at 4.) Furthermore, the OIG in its letter to Mr. Parrino stated that "[t]he scope of [his] exclusion is broad and will have a significant effect on [his] ability to work in the health care field." (Docket No. 8-9 at 1.) Mr. Parrino's ability to practice his profession will be discontinued for the time of his exclusion. As such, clearly more than his good name and reputation are at risk and the government's actions will "effectively foreclose[] [his] opportunity to practice [his] chosen profession." *Joelson*, 86 F.3d at 1420. However, Mr. Parrino did not allege in his complaint that the "stigmatizing information" was ever publically disclosed. In fact, after reviewing the record, this Court has found that neither party has alleged that the OIG or HHS have already or intend in the future to disclose Mr. Parrino's five year exclusion as a provider in all federal health care programs or the reasons for his exclusion. While other courts have found health care providers to have a liberty interest when the government has publicized the provider's exclusion, this Court has not been made aware of any such publication, and Mr. Parrino did not allege in his complaint that HHS or the OIG publically disclosed his exclusion. *See Erickson,* 67 F.3d at 862-63; *Koerpel,* 797 F.2d at 865-66. Therefore, this Court finds that Mr. Parrino does not have a constitutionally protected liberty interest.[3]

    2.   Were the Actions of HHS and the OIG "Arbitrary and Capricious"

Mr. Parrino argues that HHS and the OIG violated his right to substantive due process as he contends that "there is no 'reasonable fit' between the Agency's purpose and the means to satisfy that purpose." (Docket No. 24 at 7.) He states that his "right to due process of law is being violated because the Government is substantially increasing his penalty for an act that required no

---

[3] As the Court finds that Mr. Parrino does not have a property or liberty interest in his continued participation as a provider in all federal health care programs, even if he did assert a procedural due process claim, his claim would not succeed. *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014)) ("[T]o establish a procedural due process claim, a plaintiff must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures.")

9

*mens rea,* and where there was no criminal knowledge or intent." (Docket No. 24 at 7.) Additionally, Mr. Parrino argues that the agency's application of 42 U.S.C. § 1320a-7 is incorrect as "the statute itself must constitutionally be read to prohibit the Defendants from seizing upon the general provisions of subsection (a) [mandatory exclusion], which are much more onerous when applied to Plaintiff, instead of proceeding under the permissive sections under subsection (b)." (Docket No. 13 at 7; *see also* Docket Nos. 19 at 1-2; 24 at 8.)

When determining whether the government's actions are "arbitrary and capricious," it is important to note that "the 'arbitrary and capricious' standard is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers*, 325 F.3d at 763. The Sixth Circuit Court of Appeals has stated that "[c]onduct shocks the conscience if it violates the decencies of civilized conduct." *Range*, 763 F.3d at 589 (citing *Lewis*, 523 U.S. at 846. Furthermore, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)) (internal quotation marks omitted).

In this case, the decision of HHS and the OIG to exclude Mr. Parrino under the mandatory exclusion provision, 42 U.S.C. § 1320a-7(a), as opposed to the "permissive" exclusion provision, 42 U.S.C. § 1320a-7(b), certainly does not constitute "official egregious conduct" that is "arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846. The agencies' application of the statute to require Mr. Parrino's exclusion as a provider in all federal health care programs for five years does not shock the conscience. The agencies' actions are not "so shocking as to shake the foundations of this country." *EJS Properties*, 698 F.3d at 862. Certainly, Mr. Parrino's exclusion as a provider does not "shock our collective conscience the way that pumping a detainee's stomach does." *Id.*; *see also Lewis*, 523 U.S. at 846 ("[T]he forced pumping of a suspect's stomach [is] enough to offend due process as conduct that shocks the conscience and violates the decencies of civilized conduct.") Therefore, this Court finds that HHS and the OIG's decision to

exclude Mr. Parrino as provider from participation in all federal health care programs for five years was not arbitrary and capricious in the constitutional sense.

## CONCLUSION AND ORDER

For the reasons enumerated above, the Plaintiff DOES NOT have a Fifth Amendment Due Process Claim.

cc: Counsel

Thomas B. Russell, Senior Judge
United States District Court

December 17, 2015